**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Eli R. Greenstein (State Bar No. 217945)
egreenstein@ktmc.com
Stacey M. Kaplan (State Bar No. 241989)
skaplan@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Attorneys for Plaintiffs Michael E.
Johnson Sr. and Michael E. Johnson Jr.
and the proposed Class*

*[additional counsel listed on signature
page]*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MICHAEL E. JOHNSON SR. and MICHAEL E. JOHNSON JR. on behalf of themselves and all others similarly situated, | Case No. 2:15-CV-07394 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| | 1. **Breach of Contract** |
| VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation, | 2. **Fraudulent Misrepresentation and Fraudulent Concealment** |
| | 3. **Unjust Enrichment** |
| Defendant. | 4. **Violations of State Consumer Protection and Unfair Competition Statutes** |

The allegations herein are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel:[1]

## I.     INTRODUCTION

1.     Plaintiffs Michael E. Johnson Sr. and Michael E. Johnson Jr. ("Plaintiffs") bring this class action against Volkswagen Group of America, Inc. ("Volkswagen" or "Defendant") for violations of various state statutes and common law duties, individually and on behalf of all persons in the United States who own, owned, lease or leased one or more of the following 2.0 liter diesel-engine vehicles: the 2009 to 2015 model year Volkswagen Jetta; the 2009 to 2014 model year Volkswagen Jetta Sportwagen; the 2010 to 2015 model year Volkswagen Golf; the 2012 to 2015 model year Volkswagen Beetle; the 2012 to 2015 model year Volkswagen Beetle Convertible; the 2012 to 2015 model year Volkswagen Passat; the 2015 model year Volkswagen Golf Sportwagen; and the 2010 to 2015 model year Audi A3 (collectively, the "Non-compliant Vehicles").

2.     As detailed herein, Plaintiffs and the Class suffered diminished market value and other damages related to the Non-compliant Vehicles purchased or leased by Plaintiffs and the Classes (defined *infra*) as a direct result of Volkswagen omitting material information and issuing misleading statements about the emission standards

---

[1]     Counsel's investigation includes an analysis of publicly available information, news articles, reports to federal regulators, other statistics and additional analysis.

1

of those vehicles.   As disclosed in letters by the United States Environmental Protection Agency ("EPA") and Air Resource Board of the California Environmental Protection Agency ("Cal EPA"), dated September 18, 2015,[2] Volkswagen sold the Non-compliant Vehicles with a "defeat device" system to falsely indicate compliance with federal and California environmental laws when undergoing emission testing. In reality, the "defeat device" caused the Non-compliant Vehicles to emit, in some cases, ***up to 40 times*** the EPA allowable emission of nitrogen oxides ("NOx").  *See* Exhibit A at 3-4.

3.     NOx is a highly toxic emission.   In a 1997 report entitled *Nitrogen Oxides: Impacts on Public Health and the Environment*, the EPA characterizes nitrogen oxides as some of the most dangerous and harmful pollutants to human health and the natural environment.[3]   The report describes how, *inter alia*, NOx pollutants make their way into the drinking water creating a health hazard for infants and how even short-term exposure to NOx pollutants is associated with a variety of acute and chronic health effects, especially in children.   The report also lists the harmful effects of NOx pollutants on the environment.   Given the toxic nature of NOx, the emission of the pollutant from vehicles, including the Non-compliant

---

[2]     The EPA and Cal EPA letters are attached hereto as Exhibits A and B, respectively.

[3]     *See* Office of Air and Radiation, *Nitrogen Oxides: Impacts on Public Health and the Environment*, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, (Aug., 1997), *available at* http://www3.epa.gov/ttn/oarpg/t1/reports/noxrept.pdf.

Vehicles, is regulated and subject to specific limitations. *See* 40 C.F.R. § 86.1811-04; *see also* Exhibit A at 2 ("Light-duty vehicles must satisfy emission standards for air pollutants, ***including NOx***") (citing 40 C.F.R. § 86.1811-04) (emphasis added).

4.     Compliance with emission regulations has been a cornerstone of Volkswagen's marketing campaigns for its diesel vehicles.  For example, since 2008, Volkswagen has marketed its 2.0 liter diesel engine vehicles as having the "world's cleanest diesel engines"[4] that comply with the world's "most demanding emissions laws."[5]   On Volkswagen's main website *VW.com*, Volkswagen states that, with respect to its TDI Clean Diesel vehicles,[6] "[Volkswagen's] commitment to making vehicles that are eco-conscious is part of bigger thinking."[7]    In Volkswagen brochures, distributed to customers and the Class, Volkswagen has touted that its "Clean diesel vehicles meet the strictest EPA standards in the U.S.  Plus, TDI technology helps reduce sooty emissions by up to 90%, giving you a fuel-efficient

---

[4]     Environment, *Environmental Responsibility*, VW, available at http://update.vw.com/environment/index.htm (last visited Sept. 20, 2015).

[5]     About Audi, *Responsibility Report 2015*, AUDI USA, http://www.audiusa.com/content/dam/audiusa/Documents/Audi_Responsibility_Report_Web.pdf (last visited Sept. 20, 2015) (hereinafter, "Audi Responsibility Report").

[6]     References to "Clean Diesel" herein are to Volkswagen's marketing campaign for the Non-compliant Vehicles.

[7]     Features, *Clean Diesel*, VW, http://www.vw.com/features/clean-diesel/ (last visited Sept. 20, 2015).

and eco-conscious vehicle." *See* Exhibit C.[8]  The brochure identifies the Volkswagen Jetta TDI, the Volkswagen Jetta SportWagen TDI, the Volkswagen Golf TDI, the Volkswagen Passat TDI, and the Volkswagen Beetle TDI – each of which is now included in the Non-compliant Vehicles list.

5.     Volkswagen's statements were blatantly false.  As detailed in the EPA's Notice of Violation ("NOV") letter dated September 18, 2015, Volkswagen admitted to the EPA and the Cal EPA that it manufactured and installed sophisticated software in all of the Non-compliant Vehicles, which detected when the vehicle was undergoing EPA emission standards compliance testing, in order to manipulate the emission results.  *See* Exhibit A.  Specifically, Volkswagen programmed the Non-compliant Vehicles to fully engage their emission control systems ***only*** when the Non-compliant Vehicles' software detected it was receiving various inputs associated with the EPA's emission standards compliance testing.  *See id.*  When Volkswagen's software detected the various inputs associated with the EPA's emission testing, it activated a pre-loaded program designed to produce EPA compliant (but false) emission results.  *See id.*  During non-testing conditions, the Non-compliant Vehicles ran a program that was designed to substantially reduce the effectiveness of their emission control system.  *See id.*  As a result of Volkswagen's actions, the Non-

---

[8]     Volkswagen Brochures, *TDI Volkswagen Brochure*, GALPIN VOLKSWAGEN, http://www.galpinvolkswagen.com/Media/Default/Page/brochures/pdf/tdi.pdf    (last visited Sept. 20, 2015) (Exhibit C).

compliant Vehicles emitted NOx at **10 to 40 times above** EPA compliant levels during real world driving conditions. *See id.*

6.     The software Volkswagen created to manipulate the EPA's emission compliance tests is a "defeat device," as defined by the Clean Air Act ("CAA"). *See* 42 U.S.C. § 7522(a)(3)(B). A "defeat device" is designed to bypass, defeat, or render inoperative a vehicle's emission control system put in place to comply with CAA emission standards. *See id.* As stated by Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA, in the EPA's September 18, 2015 press release, announcing Volkswagen's wrongdoing: "Using a defeat device in cars to evade clean air standards is illegal and a threat to public health."[9]

7.     The disclosures have revealed that approximately 482,000 Volkswagen diesel vehicles are in violation of EPA and Cal EPA emission standards. *See* EPA Press Release. More Volkswagen vehicles may be found to be in violation of EPA and Cal EPA regulations, as both the EPA and the Cal EPA are investigating whether other Volkswagen diesel vehicles violate federal and state emission standards. *See* Exhibit A at 5; Exhibit B at 4.

---

[9]     2015 Press Releases, EPA, *California Notify Volkswagen of Clean Air Act Violations*, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, (Sept. 18, 2015), http://yosemite.epa.gov/opa/admpress.nsf/21b8983ffa5d0e4685257dd4006b85e2/dfc 8e33b5ab162b985257ec40057813b!OpenDocument (hereinafter "EPA Press Release").

8.     Thus, Volkswagen marketed and sold the Non-compliant Vehicles as eco-friendly, emission compliant vehicles while knowing that each one of the Non-compliant Vehicles was designed to manipulate emission compliance tests.  As noted by Tyson Slocum, director of the energy program at Public Citizen, a consumer advocacy group, "This is several steps beyond the violations that we've seen from other auto companies . . . . They appear to have designed a system with the ***intention to mislead consumers*** and the government."[10]

9.     The disclosure of the foregoing facts has resulted in economic harm to Plaintiffs and the Classes.

## II.     JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because members of the proposed Plaintiff Class are citizens of states different from Defendant's home state, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

11.     Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District as Volkswagen conducts operations within this District. Moreover, on September 18, 2015, the Cal EPA's El Monte location announced the

---

[10]     Coral Davenport, *VW Is Said to Cheat on Diesel Emissions; U.S. to Order Big Recall*, THE NEW YORK TIMES, Sept. 18, 2015 (emphasis added).

initiation of an enforcement action based, in part, on the violations set forth herein.

## III.   PARTIES

12.   Plaintiff Michael E. Johnson Sr. resides in Texarkana, Texas, and purchased a model year 2010 Volkswagen Jetta Sportwagen diesel.

13.   Plaintiff Michael E. Johnson Jr. resides in Texarkana, Texas, and purchased a new model year 2010 Volkswagen Jetta diesel.

14.   Plaintiffs selected and ultimately purchased their respective vehicles, in part, because of the "clean diesel" system, as represented through advertisements and representations made by Defendant.  Specifically, prior to their respective vehicle purchases, Plaintiffs viewed advertisements regarding the clean diesel technology. Plaintiffs respectively recall that the advertisements and representations touted the cleanliness of the engine system for the environment as well as the efficiency and power/performance of the engine system.  None of the advertisements reviewed or representations received by Plaintiffs contained any disclosure relating to the "defeat device" or that Defendant had purposefully falsified its certification of EPA compliance.  Had Defendant disclosed that the purportedly clean diesel engine in Plaintiffs' respective vehicles actually emitted up to 40 times the permitted levels of pollutants, including NOx, Plaintiffs would not have purchased their vehicles, or would have paid less for their vehicles.

15.   Plaintiffs have suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the clean diesel engine system,

including but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, and diminished performance and value of their respective vehicles.

16.     Neither Volkswagen nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the "defeat device" and/or defective design of the clean diesel engine prior to purchase.

17.     Defendant Volkswagen is a corporation doing business throughout the United States and is organized under the laws of the State of New Jersey.   At all times relevant to this action, Volkswagen manufactured, distributed, sold, leased, and warranted the Non-compliant Vehicles under the Volkswagen and Audi brand names throughout the United States.   Volkswagen and/or its agents designed, manufactured, and installed the clean diesel engine systems in the Non-compliant Vehicles, which included the "defeat device."   Volkswagen also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Non-compliant Vehicles.

## IV.   FACTUAL ALLEGATIONS

### A.     Volkswagen Markets and Sells the Non-compliant Vehicles as some of the Cleanest Diesel Operating Vehicles in the World

18.     Volkswagen's advertisements assure consumers that its vehicles are equipped with the cleanest diesel engines in the market that are environmentally friendly and meet federal and state emission standards.

19.   For instance, in a press release dated October 29, 2008, Volkswagen claimed that the 2.0 liter diesel engine in its 2009 model-year Jetta, one of the Non-compliant Vehicles, "fulfills stringent Californian [sic] emissions standards."[11]

20.   Volkswagen's assurances are repeated on vehicle window labels, which provide information on a vehicle's: features, performance, warranty, price, and environmental impact.   For instance, the Manufacturer's Suggested Retail Price ("MSRP") labels, placed on the windows of new cars include a green box titled "Environmental Performance."   *See* Exhibit D.[12]   This green box informs a potential buyer of the vehicle's impact on the environment.   Vehicles receive a "Global Warming Score" and a "Smog Score."   The scores are on a scale from 1 to 10, with 1 being the dirtiest and 10 being the "Cleanest."   The rating and scores in the green box are administered and granted by the Cal EPA.   On the MSRP label for a 2012 model-year Volkswagen Passat, one of the Non-compliant Vehicles, the green box shows that the car received a "Global Warming Score" of 8, or 3 points higher than average

---

[11]   News, *Volkswagen in Fuel Economy Guide 2009*, VOLKSWAGEN AG, (Oct. 29, 2008), http://www.volkswagenag.com/content/vwcorp/info_center/en/news/2008/10/vw_in_fuel_economy_guide.html (last visited Sept. 20, 2015).

[12]   News Release, *New car label makes it easier to choose clean, efficient transportation*, CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY AIR RESOURCES BOARD, (June 19, 2008), http://www.arb.ca.gov/newsrel/nr061908b.htm (Exhibit D).

score of a new vehicle.  *See* Exhibit E.[13]   The green box also shows that the car received a "Smog Score" of 5, the average score for a new vehicle.  *See id.*  Both of the Environmental Performance scores for the 2012 model-year Volkswagen Passat were based on the fraudulent emission results the "defeat device" produced.   In reality, as detailed in the EPA's letter, the 2012 model-year Volkswagen Passat, and all the other Non-compliant Vehicles, were emitting pollutants at up to 40 times the emission standard.

21.   Volkswagen's advertisements echoed the eco-friendly theme it promoted for its purportedly clean diesel vehicles – including "***meeting the strictest EPA standards***":



*See* Exhibit C (emphasis added).

---

[13]   2012 Volkswagen Passat TDI SEL MSRP Sticker http://gtcarlot.com/data/Volkswagen/Passat/2012/51988435/Window%20Sticker-62697023.html (last visited Sept. 20, 2015).

22.   Likewise, Volkswagen's marketing for its Audi line represented that "Audi pioneered TDI® clean diesel engines to deliver more torque, lower fuel consumption and reduce CO2 emissions, compared to equivalent gasoline engines. The result of this revolutionary engineering delivers remarkable performance, while achieving increased fuel economy."[14]

23.   Thus, Volkswagen sought to create an image of its diesel cars as having the cleanest diesel engines, being environmentally friendly, and meeting federal and state emission regulations.  As explained by the *Los Angeles Times*, the Volkswagen marketed the Non-compliant Vehicles as "clean diesels" that were "fun-to-drive alternatives to hybrids" and specifically marketed the vehicles to "eco-conscious buyers."[15]

24.   Moreover, as set forth in the chart below, Volkswagen demanded significant premiums over gasoline-engine vehicles from consumers across each of the Non-compliant Vehicles:

| Clean Diesel Price Premium | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Model | Base | | | Mid-level | | | Top-Level | | |
| | Gas | Diesel | Premium | Gas | Diesel | Premium | Gas | Diesel | Premium |
| VW Jetta | $18,780 | $21,640 | **$2,860** | $22,325 | $24,075 | **$1,750** | $25,380 | $26,410 | **$1,030** |
| VW Jetta Sportwagen (2014) | $20,995 | $26,565 | **$5,570** | $24,885 | $26,565 | **$1,680** | NA | NA | **NA** |
| VW Golf | $20,175 | $22,575 | **$2,400** | $25,225 | $26,225 | **$1,000** | $27,425 | $28,425 | **$1,000** |
| VW Golf Sportwagen | $21,625 | $24,575 | **$2,950** | $27,025 | $28,025 | **$1,000** | $29,385 | $30,385 | **$1,000** |
| VW Beetle | $20,695 | $25,330 | **$4,635** | $23,605 | $28,525 | **$4,920** | $25,885 | NA | **NA** |
| VW Beetle Convertible | $25,595 | $29,675 | **$4,080** | $27,995 | $28,525 | **$530** | $30,425 | $31,125 | **$700** |
| VW Passat | $21,340 | $27,095 | **$5,755** | $26,280 | $29,125 | **$2,845** | $31,790 | $33,925 | **$2,135** |
| Audi A3 | $30,900 | $33,200 | **$2,300** | $33,600 | $35,900 | **$2,300** | $39,750 | $42,050 | **$2,300** |

---

[14]   http://www.audiusa.com/technology/efficiency/tdi, last visited Sept. 20, 2015.

[15]   Jerry Hirsch, *VW cheated on U.S. pollution tests for 'clean diesel'*, LOS ANGELES TIMES, Sept. 18, 2015.

**B.    Volkswagen Designs and Implements a Software Program in the Non-compliant Vehicles to Manipulate Emission Tests**

25.    Notwithstanding the eco-friendly image Volkswagen was touting to the market, between the 2009 and 2015 model years, Volkswagen designed and installed a software program, the "defeat device," in the electronic control module ("ECM") of the Non-compliant Vehicles.  *See* Exhibit A at 3.

26.    Under EPA regulations, Volkswagen was required to submit Certificate of Conformity ("COC") applications for the Non-compliant Vehicles which must identify any auxiliary emission control devices ("AECDs"), and justifications for use of the AECDs, such as the "defeat device" installed in the Non-compliant Vehicles. *See id.* at 2.  Submission of the COC, gives the EPA the opportunity to evaluate the AECDs to determine whether their use is justified.  *See id.*  Each of the Non-compliant Vehicles contains an AECD, the "defeat device," that was not described in the application for the COC that purportedly covers the vehicle.  *See id.*  Vehicles equipped with "defeat devices" such as those installed by Volkswagen cannot be certified by the EPA, and manufacturers are prohibited from selling any vehicle that is not covered by an EPA-issued COC.  *See id.* at 3.

27.    According to federal and state regulators, the "defeat device" was able to detect when the Recalled Vehicle was undergoing EPA emission standards compliance testing based on certain inputs the vehicle received during the test.  *See id.*  The "defeat device" would then activate the "dyno calibration" program which

Volkswagen had pre-loaded into the vehicle's ECM.  *See id.* at 4.  The "dyno calibration" program fully engaged the vehicle's emission control system so that the vehicle produced EPA compliant emission results.  *See id.*

28.  At all other times, during real world driving conditions, the "defeat device" would run a separate program which Volkswagen referred to as the "road calibration" program.  *See id.*  The "road calibration" emitted ***up to 40 times*** the pollutants allowed under federal and state emission standards.  *See id.*

## C. Volkswagen Conceals the "Defeat Device" so Effectively that it Escapes the Attention of Regulators and Consumers for Six years

29.  Volkswagen intentionally concealed the existence of the "defeat device" from consumers and federal and state regulators for years.

30.  Volkswagen's concealment of the "defeat device" was intended to deceive consumers into believing they were purchasing one of the cleanest diesel cars on the market with stated performance features.  Indeed, "[e]xperts in automotive technology said that disengaging the pollution controls on a diesel-fueled car can yield better performance, including increased torque and acceleration."[16]  As explained by Drew Kodjak, executive director of the International Council on Clean Transportation, "[w]hen the pollution controls are functioning on these vehicles, there's a trade-off between performance and emissions . . . .  This is cutting

---

[16]   Coral Davenport, *VW Is Said to Cheat on Diesel Emissions; U.S. to Order Big Recall*, THE NEW YORK TIMES, Sept. 18, 2015.

corners."[17]  Corroborating Mr. Kodjak, other market professionals noted that "[i]t had been surprising that Volkswagen diesel models were able to get impressive horsepower output and fuel economy performance using less costly pollution control technology than employed in some other automakers' engines . . . . The software workaround may have enabled the performance without the expected pollution controls."[18]

31.    Plaintiffs and the Classes reasonably relied on Volkswagen's misrepresentations in purchasing the Non-compliant Vehicles or paying a premium for an emission compliant vehicle with the represented performance specifications.

**D.    Volkswagen Admits the Truth to the EPA About the "Defeat Device" in the Non-compliant Vehicles**

32.    On September 3, 2015, Volkswagen admitted to EPA and Cal EPA staff that the Non-compliant Vehicles were designed and manufactured with a "defeat device" that bypassed, defeated, or rendered inoperative elements of the Non-compliant Vehicles' emission control system.  *See* Exhibit B.

33.    Volkswagen's admission was more than a year in the making.  The EPA was first alerted of emissions problems in the Non-compliant Vehicles by the West Virginia University's Center for Alternative Fuels, Engines & Emissions ("WVU Center") in May 2014.  *See* Exhibit A at 4.  The WVU Center determined that testing

---

[17]    *Id.*

[18]    Jeff Plungis, *Volkswagen Admits to Cheating on U.S. Emissions Tests*, BLOOMBERG, Sept. 18, 2015.

on a 2012 model year diesel Volkswagen Jetta and 2013 model year diesel Volkswagen Passat, both of which are on the Non-compliant Vehicles list, yielded significantly higher emissions than reported. *See id.* Over the course of 2014, Volkswagen reassured both the EPA and the Cal EPA that its Non-compliant Vehicles were operating within federal and state emission regulations, and that the higher emission results could be attributed to various technical issues and unexpected real world conditions. *See id.*

34.    In December 2014, Volkswagen issued a voluntary recall of certain of the Non-compliant Vehicles in order to fix the issues causing the higher emission results. *See id.* On May 6, 2015 the EPA and the Cal EPA subsequently tested the vehicles Volkswagen alleged it fixed in the December 2014 voluntary recall. *See* Exhibit B at 3. The subsequent testing revealed that Volkswagen had not fixed the emission issue and the vehicles Volkswagen allegedly fixed in the voluntary recall, failed the emission tests. *See id.* The Cal EPA shared the results of the emission tests with Volkswagen on July 8, 2015. *See id.*

35.    Following this latest failure, the EPA and Cal EPA threatened to withhold certifications of conformity for the 2016 model year diesel vehicles, effectively suspending vehicle sales of these vehicles unless Volkswagen corrected the emission issue. *See* Exhibit A at 4.

36.    After the regulators' threat, Volkswagen finally admitted to the EPA and the Cal EPA, on September 3, 2015, that it had designed and manufactured the Non-

compliant Vehicles with a "defeat device."  *See* Exhibit B.

**E.    The "Defeat Device" and its Effect on Volkswagen's Reputation as Having Clean Diesel Vehicles Will Adversely Affect the Classes**

37.    Vehicles are purchased or leased under the reasonable assumption that they comply with federal and state emission standards and performance specifications as advertised.  Moreover, vehicle owners (and lessees) have a reasonable expectation that car manufacturers will abide by federal and state emission standards and federal, state and common law obligations to affirmatively disclose known defects, including the "defeat device," in a timely manner.  This did not happen with respect to the Non-compliant Vehicles.

38.    As a result of Volkswagen's admitted use of "defeat devices" in the Non-compliant Vehicles, devices which artificially enhanced road performance, all purchasers of the Non-compliant Vehicles overpaid for their cars at the time of purchase.

39.    As news of the Non-compliant Vehicles' failure to follow federal and state emission standards surfaced on September 18, 2015, the value of Volkswagen's vehicles had diminished and will continue to do so as purchasers, owners and persons leasing these vehicles are encumbered with the stigma of operating a high polluting vehicle designed to evade emission testing.  As noted in a September 18, 2015 article in the *Los Angeles Times*, "people buy diesel cars from Volkswagen because they feel they are clean diesel cars, and they are told they are clean diesel cars . . . .  I don't

want to be spewing noxious gases into the environment."[19]

40.    These reports, along with the reports that are to follow in the coming days and weeks, have materially negatively impacted the value of the Non-compliant Vehicles, including Plaintiffs' vehicles, and will continue to do so in the future. Indeed, an analyst for Kelly Blue Book described the disclosures as "pretty ugly" and noted that "Volkswagen has far outstripped everyone else in selling diesel cars.  This challenges everything they've been saying about those vehicles."[20]    Moreover, *Consumer Reports* has suspended its "recommended" rating for the Volkswagen Jetta and Passat diesels.[21]  According to *Consumer Reports*, "These recommendations will be suspended until Consumer Reports can re-test these vehicles with a recall repair performed.  Once the emissions systems are functioning properly, we will assess whether the repair has adversely affected performance or fuel economy."[22]

# V.    TOLLING OF THE STATUTE OF LIMITATIONS

## A.    Discovery Rule Tolling

41.    Class Members could not reasonably discover Volkswagen's deception

---

[19]    Samantha Masunga, *Volkswagen customers sound off on Twitter,* THE LOS ANGELES TIMES, Sept. 18, 2015, *available at* http://www.latimes.com/business/la-fi-vw-reaction-20150918-htmlstory.html.

[20]    Jerry Hirsch*, VW cheated on U.S. pollution tests for 'clean diesel'*, LOS ANGELES TIMES, Sept. 18, 2015.

[21]    Jon Linkov, *VW, Audi Cited by EPA for Cheating on Diesel Emissions Tests*, Consumer Reports, Sept. 21, 2015, *available at* http://www.consumerreports.org/cro/cars/vw--audi-cited-by-epa-for-cheating-on-diesel-emissions-tests.

[22]    *Id.*

with respect to its Clean Diesel marketing campaign and its use of a "defeat device" in the Non-compliant Vehicles prior to the disclosure of the EPA and Cal EPA letters.

42.   In fact, it took investigations from three separate investigatory entities, including two environmental regulators, to discover Volkswagen's "defeat device." *See* Exhibit A at 4 (referring to the WVU Center, the EPA, and the Cal EPA).   As detailed in the Cal EPA's letter, the Cal EPA was required to use a sophisticated over-the-road Portable Emission Measurement System ("PEMS") and then develop a special dynamometer cycle to determine why the Non-compliant Vehicles were failing the emission tests when tested for normal driving conditions.   *See* Exhibit B. The difficulty of detecting the "defeat device" and the sophistication of the "defeat device," described herein, establish Volkswagen' intention of hiding its actions from both regulators and consumers.

43.   Within the time period of any applicable statutes of limitation, Plaintiffs and members of the proposed Classes could not have discovered through the exercise of reasonable diligence that Volkswagen was concealing the conduct complained of herein.

44.   Plaintiffs and other Class members did not discover and did not know of any facts that would have caused a reasonable person to suspect that Volkswagen did not report information within its knowledge concerning the use of a "defeat device" in the Non-compliant Vehicles to federal and state regulators, its dealerships, or

consumers.  A reasonable and diligent investigation would not have disclosed that Volkswagen possessed information, which Volkswagen chose to conceal, about its "defeat device" scheme to evade emission standards.  Plaintiffs learned of the "defeat device" installed on their respective Volkswagen vehicles shortly after news of Volkswagen's actions made headlines on the national media in September 2015.

45.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect as to all the Non-compliant Vehicles.

**B.      Fraudulent Concealment Tolling**

46.    Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged herein, have tolled all applicable statutes of limitations.

47.    Volkswagen falsely represented that its vehicles: complied with and exceeded federal and state emission standards; emitted NOx and other pollutants at levels in compliance or below federal and state standards; and were eco-conscious.

**C.      Tolling by Estoppel**

48.    Volkswagen was under a continuous duty to disclose to Plaintiffs and the Classes the true character, quality, and nature of the Non-compliant Vehicles' emissions, emission control system, and the compliance of the emission control system with applicable federal and state law.

49.    Volkswagen knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Non-compliant Vehicles' emissions and emission control system.

50.    At all times, Volkswagen was under a continuous duty to disclose to Plaintiffs and the Classes that it engaged in the fraudulent actions detailed herein to evade federal and state emission and clean air standards and to artificially enhance the road performance of the Non-compliant Vehicles.

51.    Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## VI.    CLASS ACTION ALLEGATIONS

52.    Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and/or (b)(3) on behalf of the following Classes: (i) All persons and entities that purchased, leased or own the Non-compliant Vehicles in the United States (the "Nationwide Class"); and (ii) All persons or entities that purchased, leased or own the Non-compliant Vehicles in the states of Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin and Wyoming (the "Consumer Protection Statute Class").

53.    Excluded from the Classes are individuals who have personal injury claims resulting from the "defeat device" in a Recalled Vehicle.  Also excluded from

the Classes, are Volkswagen and its parent, subsidiaries and affiliates.   Plaintiffs reserve the right to revise the definition of the Classes based upon subsequently discovered information.

54.   The Classes are so numerous that joinder of all members is impracticable.

55.   A Class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

56.   Plaintiffs' claims are typical of the claims of the Classes.   As alleged herein, Plaintiffs and members of the Classes all sustained damages arising out of the Defendant's same course of unlawful conduct.

57.   There are questions of law and fact common to the Classes that predominate over individual issues, including but not limited to the following:

- Whether Volkswagen sold the Non-compliant Vehicles with a "defeat device";

- Whether Volkswagen sold the Non-compliant Vehicles with a "defeat device" in order to circumvent federal and state clean air statutes and emission regulations;

- Whether Volkswagen's use of the "defeat device" manipulated the performance and/or fuel efficiency of the Non-compliant Vehicles;

- Whether Volkswagen's misrepresentations and omissions concerning the use of a "defeat device" were likely to deceive a reasonable person;

- Whether Volkswagen's Clean Diesel marketing campaign included false

and misleading statements by failing to disclose Volkswagen's use of a "defeat device" in the Non-compliant Vehicles;

- Whether Volkswagen's Clean Diesel marketing campaign was likely to deceive a reasonable person;

- Whether Volkswagen's Clean Diesel marketing campaign included false and misleading statements by claiming that the Non-compliant Vehicles were environmentally friendly and/or failing to disclose that the Non-compliant Vehicles fail to meet federal and state emission standards

- Whether a reasonable customer would pay less for a Non-compliant Vehicle if the use of a "defeat device" was disclosed at the time of purchase or lease;

- Whether a reasonable customer would pay less for a Non-compliant Vehicle that did not comply with federal and state clean air statutes and emission regulations;

- Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted; and

- Whether injunctive relief enjoining the reoccurrence of Defendant's conduct and/or declaratory relief that such conduct is unlawful, is warranted.

58.   The interest of Class members in individually controlling the prosecution

of separate actions is theoretical and not practical.  The Classes have a high degree of similarity and are cohesive.  Moreover, individual litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the courts.  Plaintiffs anticipate no difficulty in the management of this matter as a class action.

59.    Class action status is also warranted under Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

60.    Class action status is also warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

61.    Plaintiffs are adequate representatives who have selected highly competent counsel who are fully qualified to represent the Classes.  Plaintiffs intend to prosecute this action vigorously.

## VII.   CLAIMS FOR RELIEF

### FIRST CLAIM
**Common Law Breach of Contract**
**On behalf of the Nationwide Class**

62.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

63.   Volkswagen breached contractual obligations by tendering to Plaintiffs and the Class vehicles equipped with a "defeat device" designed to reduce the effectiveness of the vehicle's emission control system, causing the Non-compliant Vehicles to emit pollutants at up to 40 times the EPA emission standards.

64.   The "defeat device" present in the Non-compliant Vehicles did not constitute merely a minor breach, as the existence of the "defeat devices" caused the Non-compliant Vehicles to emit pollutants at a far higher rate than Volkswagen warranted and in violation of federal and state emission standards.  As such, Plaintiffs and the Class would not have purchased or leased the Non-compliant Vehicles at the price they paid, or at all, had they known of the presence of the "defeat device."

65.   As a direct and proximate result of Defendant's breach of contract or warranty, Plaintiffs and the Class have suffered damages.

## SECOND CLAIM
### Fraudulent Misrepresentation & Fraudulent Concealment
### On behalf of the Nationwide Class

66.   Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

67.   As described above, Defendant made material omissions and affirmative misrepresentations regarding the Non-compliant Vehicles.

68.   Defendant knew these representations were false when made.

69.   The vehicles Plaintiffs and the Class purchased or leased were defective because the vehicles were subject to a "defeat device" that would reduce the

effectiveness of the Non-compliant Vehicles' emission control system as well as their road performance.

70.    Defendant had a duty to disclose that these vehicles were defective in that the vehicles were subject to a "defeat device" that would reduce the effectiveness of the vehicles' emission control system.

71.    The aforementioned concealment was material because if it had been disclosed Plaintiffs and the Class would not have purchased or leased the vehicles at the price they paid, or would not have purchased or leased the vehicles at all.

72.    The aforementioned representations were material because they were facts that would typically be relied upon by a person purchasing or leasing a motor vehicle – including vehicles sold under a Clean Diesel marketing campaign. Defendant knew or recklessly disregarded that its representations as to the Non-compliant Vehicles were false and or omitted material information.   Defendant intentionally made the false statements in order to induce Plaintiffs and the Class to purchase or lease the Non-compliant Vehicles.

73.    Plaintiffs and the Class relied upon Volkswagen's representations and omissions in purchasing or leasing the Non-compliant Vehicles.

74.    As a result of their reliance, Plaintiffs and the Class have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

75.   Defendant's   conduct   was   knowing,   intentional,   with   malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs.   Plaintiffs and the Class are therefore entitled to an award of punitive damages.

### THIRD CLAIM
**Unjust Enrichment,
On behalf of the Nationwide Class**

76.   Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

77.   Plaintiffs and the Class paid the value of vehicles that have fully operational emission control systems that comply with federal and state emission standards, would not be compromised by the need for repairs, and could be legally operated, but were provided with vehicles that are defective, needed repairs, and could not be legally operated.

78.   As such, Plaintiffs and the Class conferred a windfall upon Volkswagen, which knew of the windfall and has unjustly retained such benefits.

79.   As a direct and proximate result of Volkswagen's unjust enrichment, Plaintiffs and the Class have suffered and continue to suffer various damages, including, but not limited to, restitution of all amounts by which Defendant was enriched through its misconduct.

## FOURTH CLAIM
### Violations of State Consumer Protection
### and Unfair Competition Statutes
### On behalf of the Consumer Protection Statute Class

80.   Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

81.   Defendant engaged in unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices with respect to the sale of the Non-compliant Vehicles in violation of the following state consumer protection and unfair competition statutes.

82.   Defendant has violated Alaska Stat. § 45-50-471 *et seq.*

83.   Defendant has violated Ariz. Rev. Stat. § 44-1521 *et seq.*

84.   Defendant has violated Arkansas Code § 4-88-101 *et seq.*

85.   Defendant has violated Cal. Civ. Code § 1770 *et seq.*, Cal. Bus. & Prof. Code § 17200 *et seq.*, and Cal. Bus. & Prof. Code § 17070.

86.   Defendant has violated Colo. Rev. Stat. § 6-1-101 *et seq.*

87.   Defendant has violated Conn. Gen. Stat. § 42-110A, *et seq.*

88.   Defendant has violated 6 Del. Code § 2513 *et seq.* and 6 Del. Code § 2532 *et seq.*

89.   Defendant has violated D.C. Code Ann. § 28-3901 *et seq.*

90.   Defendant has violated Florida Stat. § 501.201 *et seq.*

91.   Defendant has violated Ga. Code Ann. § 10-1-370 *et seq.*

92. Defendant has violated Haw. Rev. Stat. Ann. § 481A-3.

93. Defendant has violated Idaho Code § 48-601 *et seq.*

94. Defendant has violated 815 Ill. Comp. Stat. 505/1 *et seq.* and 815 Ill. Comp. Stat. 510/1 *et seq.*

95. Defendant has violated Ind. Code § 24-5-0.5-3.

96. Defendant has violated Iowa Code § 714H.1 *et seq.*

97. Defendant has violated Kan. Stat. Ann. § 50-623 *et seq.*

98. Defendant has violated Ky. Rev. Stat. § 367.110 *et seq.*

99. Defendant has violated Me. Rev. Stat. Ann. Tit. 5 § 205-A *et seq.*

100. Defendant has violated Md. Code Com. Law § 13-101 *et seq.*

101. Defendant has violated Mass. Gen. Laws chapter 93A § 1 *et seq.*

102. Defendant has violated Mich. Comp. Laws § 445.901.

103. Defendant has violated Minn. Stat. § 325F.69 *et seq.* and Minn. Stat. § 325D.43 *et seq.*

104. Defendant has violated Mo. Ann. Stat. 407.020.

105. Defendant has violated Neb. Rev. Stat. § 87-302 and Neb. Rev. Stat. § 59-1601 *et seq.*

106. Defendant has violated Nev. Rev. Stat. § 598.0903 *et seq.*

107. Defendant has violated New Hampshire Rev. Stat. § 358-A:1 *et seq.*

108. Defendant has violated N.J. Stat. Ann. § 56:8-1, *et seq.*

109. Defendant has violated New Mexico Stat. Ann. § 57-12-1 *et seq.*

110.  Defendant has violated N.Y. Gen. Bus. Law § 349 *et seq.*

111.  Defendant has violated North Carolina Gen. Stat. § 75-1.1 *et seq.*

112.  Defendant has violated N.D. Cent. Code § 51-15-02.

113.  Defendant has violated Ohio Rev. Code Ann. § 1345.01 *et seq.* and Ohio Rev. Code Ann. § 4165.01 *et seq.*

114.  Defendant has violated Okla. Stat. Tit. 15 § 751 *et seq.* and 78 Okla. Stat. Ann. § 51 *et seq.*

115.  Defendant has violated Or. Rev. Stat. § 646.605 *et seq.*

116.  Defendant has violated 73 Pa. Stat. § 201-1 *et seq.*

117.  Defendant has violated Rhode Island Gen. Laws § 6-13.1-1 *et seq.*

118.  Defendant has violated S.D. Codified Laws § 37-24-6 *et seq.*

119.  Defendant has violated Tex. Bus. & Com. Code § 17.41 *et seq.*

120.  Defendant has violated Utah Code Ann. § 13-11-1 *et seq.*

121.  Defendant has violated Vt. Stat. Ann. Tit. 9, § 2451 *et seq.*

122.  Defendant has violated Va. Code Ann. 59.1-200 *et seq.*

123.  Defendant has violated Rev. Code Wash. Ann. § 19.86.010 *et seq.*

124.  Defendant has violated W. Va. Code § 46A-1-101 *et seq.*

125.  Defendant has violated Wisc. Stat. § 100.18 *et seq.*

126.  Defendant has violated Wyo. Stat. § 45-12-105 *et seq.*

127. Defendant's misrepresentations and omissions regarding the emission compliance of its vehicles as set forth in this Complaint were likely to deceive a

reasonable consumer, and the information would be material to a reasonable consumer.

128. Defendant's intentional and purposeful acts, described above, were intended to and did cause Plaintiffs and the Class to pay artificially inflated prices for Non-Compliant Vehicles purchased or leased in the states (and the District of Columbia) listed above.

129. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and Class members have been injured in their business and property in that they paid more for the Non-compliant Vehicles than they otherwise would have paid in the absence of Defendant's unlawful conduct.

130. All of the wrongful conduct alleged herein occurred in the conduct of Defendant's business.   Defendant's wrongful conduct is part of a pattern or generalized course of conduct that was perpetrated nationwide.

131. Plaintiffs and Class members are therefore entitled to all appropriate relief as provided for by the laws of the states listed above, including but not limited to, actual damages, injunctive relief, attorneys' fees, and equitable relief, such as restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendant as a result of its unlawful conduct.

**VIII.  PRAYER FOR RELIEF**

132.  WHEREFORE, Plaintiffs request that this Court enter a judgment against

Defendant and in favor of Plaintiffs and the Classes and award the following relief:

A.      That this action be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Classes and Plaintiffs' counsel as counsel for the Classes;

B.      That the conduct alleged herein be declared, adjudged and decreed to be unlawful;

C.      Compensatory, consequential, and general damages in an amount to be determined at trial;

D.      Costs and disbursements of the action;

E.      Restitution and/or disgorgement of Defendant's ill-gotten gains, and the imposition of an equitable constructive trust over all such amounts for the benefit of the Classes;

F.      Pre- and post-judgment interest;

G.      Reasonable attorneys' fees;

H.      That Defendant be enjoined from the conduct challenged herein;

I.      Such monetary, injunctive other relief to each of the subclasses that is provided for by the state statutes pursuant to each Count alleged; and

J.      Such other and further relief as this Court may deem just and proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all claims in this action.

///

DATED: September 21, 2015                **KESSLER TOPAZ**
                                          **MELTZER & CHECK, LLP**

                                          s/ Eli R. Greenstein
                                          Eli R. Greenstein (State Bar No. 217945)
                                          egreenstein@ktmc.com
                                          Stacey M. Kaplan (State Bar No. 241989)
                                          skaplan@ktmc.com
                                          One Sansome Street, Suite 1850
                                          San Francisco, CA 94104
                                          Telephone: (415) 400-3000
                                          Facsimile: (415) 400-3001

                                          - and –

                                          **KESSLER TOPAZ**
                                          **MELTZER & CHECK, LLP**
                                          Joseph H. Meltzer
                                          jmeltzer@ktmc.com
                                          Darren J. Check
                                          dcheck@ktmc.com
                                          Peter A. Muhic
                                          pmuhic@ktmc.com
                                          Naumon A. Amjed
                                          namjed@ktmc.com
                                          280 King of Prussia Road
                                          Radnor, PA 19087
                                          Telephone: (610) 667-7706
                                          Facsimile: (610) 667-7056

                                          *Attorneys for Plaintiffs Michael E. Johnson Sr.*
                                          *and Michael E. Johnson Jr. and the proposed*
                                          *Class*

32